UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE LIFE INSURANCE COMPANY, ALLSTATE BANK (F/K/A ALLSTATE FEDERAL SAVINGS BANK), ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK, ALLSTATE RETIREMENT PLAN, and AGENTS PENSION PLAN,<br><br>         Plaintiffs,<br><br>    v.<br><br>ACE SECURITIES CORP., DEUTSCHE ALT-A SECURITIES, INC., DB STRUCTURED PRODUCTS, INC., DEUTSCHE BANK AG NEW YORK BRANCH, and DEUTSCHE BANK SECURITIES, INC.,<br><br>         Defendants. | 11 Civ. 1914 (LBS)<br><br>**MEMORANDUM & ORDER** |

SAND, J.

  Plaintiffs brought this action in the New York State Supreme Court of New York County on February 18, 2011, alleging state common law claims of fraud and negligent misrepresentation. Defendants removed this action to this Court on March 18, 2011, pursuant to 28 U.S.C. §§ 1334(b), 1441, 1446, and 1452(a). On April 15, 2011, Plaintiff moved to remand the case back to the state court pursuant to 28 U.S.C. §§ 1334(c)(1)–(2) and 1452(b).

  For the reasons stated below, Plaintiffs' motion is granted.

  **I.**  **Background**

  Plaintiff Allstate Insurance Company is an Illinois corporation, operating as a publicly-held personal lines insurer licensed to do business in New York. Plaintiff Allstate Life Insurance

Company is also an Illinois corporation and a wholly-owned subsidiary of Allstate Insurance Company, while Plaintiff Allstate Life Insurance Company of New York, a New York corporation, is a wholly owned subsidiary of Allstate Life Insurance Company. Plaintiffs Allstate Retirement Plan and Agents Pension Plan are ERISA plans sponsored by Allstate Insurance Company, while Allstate Bank is a federally-chartered thrift institution registered in Illinois. Compl. ¶¶ 7–12.[1] Defendants are New York and Delaware corporations associated with a German corporation, Deutsche Bank AG. *Id.* ¶¶ 13–18.

Defendants created and marketed certain mortgage-backed securities (the "Certificates"), and sold them to Plaintiffs. Defendants DB Structured Products Inc. ("DBSP") and Deutsche Bank AG New York acted as sponsors and sellers for the offerings at issue in this case, obtaining mortgage loans from third parties that were pooled together in the securitizations, then sold or transferred to depositors. *Id.* ¶ 41. Defendants Ace Securities Corp. and Deutsche Alt-A Securities Inc. acted as the depositors, purchasing the mortgage loans from the sponsors and sellers, transferring them to trusts that are not parties to this action, and then issuing the Certificates, which represented interests in the mortgage loans held by the trusts. *Id.* The Certificates were sold in classes according to credit ratings, and were expected to provide interest on the income stream generated by the pooled and securitized mortgage loans. *Id.* Together, the depositors and the sponsors and sellers sold the Certificates to investors including Plaintiffs. *Id.* Plaintiffs invested a total of $185 million in mortgage-backed securities issued by Defendants "as part of a broader plan to invest in a diverse array of mortgage-backed securities." *Id.* ¶ 3.

---

[1] All citations to the Complaint refer to the Complaint filed by Plaintiffs in the Supreme Court of the State of New York, New York County on February 18, 2011.

Plaintiffs now maintain that Defendants included various misrepresentations and false statements in the prospectuses, registration statements, terms sheets, and other materials (together, the "Offering Materials") for the Certificates.  Defendants allegedly represented these securities as "highly-rated, safe securities backed by pools of loans with specifically-represented mix profiles," when they were "a toxic mix of loans given to borrowers who could not afford the properties, and thus were highly likely to default."  *Id.* ¶ 1.  In particular, Plaintiffs allege that Defendants failed to disclose that a high percentage of the loans in the pools had significant rates of default and delinquency, that Defendants were informed of these defects, and that Defendants chose to waive the defects and use them to negotiate a lower price when they purchased the loan pools.  *Id.* ¶¶ 55, 70, 76–82.  Plaintiffs also allege misrepresentations regarding the owner-occupancy of the mortgaged properties, *id.* ¶¶ 57–59, 83–92; the ratio between the principal balance of mortgage loans and the appraised value of mortgaged properties, *id.* ¶¶ 60–61, 93–103; and the credit ratings of the Certificates, *id.* ¶¶ 62–63.  In general, Plaintiffs claim, the mortgage loans "did not comply with the underwriting standards the Offering Materials described."  *Id.* ¶ 71.  Plaintiffs bring a claim of common-law fraud, alleging that Defendants knowingly made false and misleading misstatements and omissions with regard to the Certificates.  *Id.* ¶¶ 207–12.   Plaintiffs also bring a claim of negligent misrepresentation, alleging that Plaintiffs relied on the unique, specialized expertise of Defendants; that because of this reliance, Defendants owed a duty to provide complete, accurate, and timely information regarding the mortgage loans; and that Defendants breached this duty.  *Id.* ¶¶ 215–20.

The securities issued by Defendants contained 47,135 mortgage loans originated by fourteen third-party originators.  *Id.* ¶ 128.  Defendants' Notice of Removal states that bankruptcy proceedings are underway for three of these fourteen originators: People's Choice

3

Home Loan, Inc. ("People's Choice"); First NLC Financial Services, LLC ("First NLC"); and American Home Mortgage Corporation ("AHM").  Defendants claim that certain of the alleged misrepresentations in Plaintiffs' Complaint were provided to Defendants by these three companies.  Notice of Removal ¶¶ 8–9.  Furthermore, Defendants state that these originators have a contractual indemnification and/or contribution obligation to Defendants for any claims arising out of misstatements or omissions they made to Defendants.  *Id.* ¶ 10; Reynard Decl. Ex. C, at 34, § 7.03(viii) (People's Choice purchasing agreement); Ex. D, at 52–55, § 12A.07 (AHM purchasing agreement); Ex. E, at 33–34, § 7.03 (First NLC purchasing agreement).  People's Choice originated a total of 1,350 mortgage loans out of the 47,135 securitized by Defendants, a total of 3.24% of these loans.  AHM originated 4,104 loans, or 8.52% of all loans underlying Defendants' securitizations.  First NLC originated 1,060 loans, or 2.25% of the total.  Compl. ¶ 128.

People's Choice filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code on March 20, 2007; a plan of reorganization has been confirmed in these proceedings.  *Id.* ¶ 11; *In re People's Choice Home Loan Inc., et al.*, No. 8:07-bk-10765-RK (Bankr. C.D. Cal.).  Under this plan, unsecured claimants against People's Choice Home Loan, Inc., signatory to the master loan purchasing agreement with Defendants, are estimated to recover approximately 10–14% of allowed claims or interests.  Chung Decl. Ex. J, at 19–20.  Defendant DBSP filed a Proof of Claim in that proceeding on August 23, 2007, including a claim for indemnification of litigation costs.  Reynard Decl. Ex. F.  AHM filed a Chapter 11 bankruptcy petition on August 6, 2007; a plan of reorganization has also been confirmed in these proceedings.  Notice of Removal ¶ 15; *In re Am. Home Mortg. Holdings, Inc.*, No. 07-11047-CSS (Bankr. D. Del.).  Unsecured claimants against American Home Mortgage Corp., signatory

to the master loan purchasing agreement with Defendants, are estimated to recover approximately 1.06% of allowed claims or interests.  Chung Decl. Ex. L, at 8.  Defendant Deutsche Bank Securities, Inc. filed a Proof of Claim in that proceeding on January 11, 2008, including a claim for indemnification of litigation costs.  Reynard Decl. Ex. G.  Finally, First NLC filed a Chapter 11 bankruptcy petition on January 18, 2008, later converted to a Chapter 7 proceeding; no plan of reorganization has yet been confirmed.  Notice of Removal ¶ 13; *In re First NLC Fin. Servs., LLC*, No. 08-10632-PGH (Bankr. S.D. Fla.).  Defendant DBSP filed a Proof of Claim in that proceeding on April 28, 2008, reserving its rights to seek indemnification and contribution.  Notice of Removal ¶ 14; Reynard Decl. Ex. H.

## II.    Legal Standard

A case may be removed from state court to federal court "only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction."  28 U.S.C. § 1441(a).  If a federal district court determines that it lacks subject matter jurisdiction over a case removed from state court, the case must be remanded.  *Id.* § 1447(c).  Plaintiffs may not "use artful pleading to close off defendant's right to a federal forum."  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) (internal quotation marks and citations omitted).  When a party challenges the removal of an action from state court, the removing party has the burden "to establish its right to a federal forum by competent proof."  *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979).  On a motion for remand, the court "must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff."  *In re NASDAQ Mkt. Makers Antitrust Litig.*, 929 F. Supp. 174, 178 (S.D.N.Y. 1996).

### III. Discussion

#### A. Bankruptcy Jurisdiction Under 28 U.S.C. § 1334(b)

District courts "have original but not exclusive jurisdiction of all civil proceedings arising under" the United States Bankruptcy Code, "or arising in or related to cases under" the Code. 28 U.S.C. § 1334(b). The United States Court of Appeals for the Second Circuit has held that litigation is "related to" a bankruptcy proceeding if "its outcome might have any 'conceivable effect' on the bankrupt estate. If that question is answered affirmatively, the litigation falls within the 'related to' jurisdiction of the bankruptcy court." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992). However, "a bankruptcy court's 'related to' jurisdiction cannot be limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).

Defendants argue that this action is "related to" the bankruptcy proceedings of People's Choice, First NLC, and AHM. They point out that the master loan purchase agreements, which govern Defendants' purchase of the mortgage loans issued by these three bankrupt originators, require the originators to indemnify Defendants for any losses and costs of litigation arising form alleged or actual false or misleading statements made by the originators in their representations and warranties contained in those purchase agreements. Defendants maintain that the allegedly false and misleading statements in the Offering Materials were based on misrepresentations that the originators made to Defendants. A finding of liability on the part of Defendants could impose an obligation of indemnification on the three originators, enlarging Defendants' *pro rata* share of the assets available for distribution in bankruptcy and reducing the assets available to other creditors. Therefore, Defendants argue, this action could have a "conceivable effect" on the People's Choice, First NLC, and AHM bankruptcy actions.

Courts in this Circuit and others have held that the broad "conceivable effect" standard for "related to" bankruptcy jurisdiction no longer applies when plans of reorganization have already been confirmed by a bankruptcy court. Instead, an adversary proceeding must meet a two-pronged test to fall under bankruptcy jurisdiction after confirmation. First, bankruptcy jurisdiction obtains when the matter has a "close nexus to the bankruptcy plan or proceeding . . . ." *In re Gen. Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005) (quoting *In re Resorts Intern., Inc.*, 372 F.3d 154, 168–69 (3d Cir. 2004)). Second, the plan of reorganization "must provide for the retention of jurisdiction over the dispute." *Id.* at 73–74. Here, the Chapter 11 reorganization plans for People's Choice and AHM and have been confirmed by the bankruptcy court. Therefore, Plaintiffs argue, the instant case falls under the "close nexus" standard, not the "conceivable effect" standard, for "related to" bankruptcy jurisdiction.[2]

---

[2] Defendants urge this Court to adopt the approach of the United States Court of Appeals for the First Circuit in *In re Boston Regional Medical Center*, distinguishing between Chapter 11 reorganization plans involving liquidation and true Chapter 11 reorganization plans where the debtor emerges from bankruptcy. 410 F.3d 100, 106–07 (1st Cir. 2005). The First Circuit noted that the justification for narrowing post-confirmation bankruptcy jurisdiction—to allow debtors to be emancipated by reorganization and emerge as viable businesses—does not apply to liquidations. The fact that a liquidated debtor, in contrast to a reorganized debtor, has "no authority to reenter the marketplace . . . undercuts the primary purposes for parsimoniously policing the perimeter of post-confirmation jurisdiction." *Id.* Moreover, liquidations invoke "the strong federal policy in favor of the expeditious liquidation of debtor corporations and the prompt distribution of available assets to creditors." *Id.* at 107.

The Second Circuit has not considered this issue, but most if not all the courts in this District that have done so have adopted or approved the reasoning of *Boston Regional*. *See, e.g.*, *In re Refco, Inc. Sec. Litig.*, 628 F. Supp. 2d 432, 442 (S.D.N.Y. 2008) ("[T]he First Circuit's reasoning is persuasive . . . ."); *In re Cross Media Mktg. Corp.*, 367 B.R. 435, 443 (Bankr. S.D.N.Y. 2007) (applying *Boston Regional* rule); *In re Gen. Media, Inc.*, 335 B.R. at 74 n.7 (approving rule); *In re G+G Retail, Inc.*, No. BKR 06-10152 (RDD), 2010 WL 743918, at *1, *6 n.1 (Bankr. S.D.N.Y. Feb. 24, 2010) ("This Court has core jurisdiction . . . notwithstanding the confirmation and consummation of the Debtor's Chapter 11 plan."). However, Plaintiffs point out that the plain language of *Boston Regional* limits the holding of broad post-liquidation bankruptcy jurisdiction to cases "when a debtor (or a trustee acting to the debtor's behoof) commences litigation designed to marshal the debtor's assets for the benefit of its creditors pursuant to a liquidating plan of reorganization . . . ." 410 F.3d at 107; *see also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 447 B.R. 302, 309 (C.D. Cal. 2010) (*Boston Regional* rule applies only to cases where debtor or its trustee files suit to enlarge bankruptcy estate, not to suit between non-debtors). All of the Southern District cases cited above involve debtors filing suit. Here, neither Plaintiffs nor Defendants in the instant adversary proceeding are debtors in bankruptcy. Ultimately, resolution of this case does not require a holding on the applicability and scope of the *Boston Regional* rule, since jurisdiction attaches under both the "conceivable effect" and "close nexus" tests.

Even under the stricter "close nexus" standard, this Court retains jurisdiction over the instant proceeding. The parties do not dispute that the second prong of the "close nexus" standard—that the plan of reorganization explicitly provide for continued bankruptcy court jurisdiction—is met here. *See* Reynard Decl. Ex. A, 51–53 (People's Choice liquidation plan); Ex. B, 91–94 (AHM liquidation plan); *cf. In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993) ("A bankruptcy court retains post-confirmation jurisdiction in a chapter 11 proceeding only to the extent provided in the plan of reorganization."). As for the first prong, the "close nexus" standard finds jurisdiction "when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement." *In re Gen. Media*, 335 B.R. at 73. Defendant DBSP entered into indemnification agreements with People's Choice and AHM which required these loan originators to indemnify Defendant "against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense, or assertion based on or grounded upon, or resulting from a breach of the Seller's representations and warranties" contained in the master loan purchase agreements. Reynard Decl. Ex. C at 34–35 (People's Choice agreement); *see also* Ex. D at 52–53 (AHM agreement) (providing indemnification for "legal fees and expenses and related costs" arising out of untrue statements of material facts or breaches of representations or warranties in master loan purchase agreement). These rights of indemnification arose immediately upon the filing of this lawsuit, covering the costs of litigation regardless of whether Defendants are ultimately found liable. Therefore, this case already "affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan[,]" meeting the "close nexus" test for bankruptcy jurisdiction. *In re Gen. Media*, 335 B.R. at 73. A number of cases concur with this

conclusion, including *Stichting Pensioenfonds*, a case cited by Plaintiffs. 447 B.R. at 309–10; *see also Fed. Home Loan Bank of Chicago v. Banc of Am.*, 448 B.R. 517, 524–25 (C.D. Cal. 2011); *Charles Schwab Corp. v. Banc of Am. Sec., Inc.*, No. 10-CV-3489-LHK, 2011 WL 864978, at *5 (N.D. Cal. Mar. 11, 2011) (party claiming indemnification "has satisfied the 'close nexus' test regarding the AHM bankruptcy . . . .").

Plaintiffs argue that the three bankrupt originators in this case amounted to a minority of the fourteen originators involved in this action, and generated only a small minority of the mortgage loans securitized in the Certificates—6,514 out of 47,135, or 13.8% of the total. Furthermore, Plaintiffs argue that the claims filed by Defendants against the bankrupt originators would yield an insignificant recovery. Defendants filed a Proof of Claim in February 2007 against People's Choice stating that they had accrued $10,000 in litigation costs subject to indemnification. Reynard Decl. Ex. F, ¶ 7. Under the reorganization plan, such unsecured claims against People's Choice have an estimated recovery of 10–14%. Chung Decl. Ex. J, at 19–20. Likewise, Defendants filed a Proof of Claim in January 2008 against AHM stating that they had accrued $350,000 in litigation costs subject to indemnification. Reynard Decl. Ex. G, ¶ 22. Under the reorganization plan, such unsecured claims against AHM have an estimated recovery of 1.06%. Chung Decl. Ex. L, at 8. Together, these figures yield a possible recovery for Defendants of $5,110. Plaintiffs argue that finding bankruptcy jurisdiction on such a miniscule sum, contrasted with the $185 million invested by Plaintiffs in Defendants' securities, would violate both the "close nexus" and "conceivable effect" standards.[3] *See Charles Schwab*

---

[3] In a post-briefing submission, Plaintiffs cite *Fed. Home Loan Bank of Indianapolis v. Banc of Am. Mortg. Sec., Inc.*, No. 10 Civ. 1463-WTL-DML, 2011 WL 2133539 (S.D. Ind. May 25, 2011), for the proposition that a contractual indemnification claim is insufficient to give rise to "related to" bankruptcy jurisdiction. However, this case comes from a district court within the Seventh Circuit, whose test for "related to" jurisdiction differs from that of the Second Circuit. The Seventh Circuit finds bankruptcy jurisdiction "when the dispute affects the amount of

*Corp. v. BNP Paribas Sec.*, No. C 10-04030 SI, 2011 WL 724696, at *2 (N.D. Cal. Feb. 23, 2011) (refusing to find bankruptcy jurisdiction under "close nexus" test where bankrupt originator generated only 5.5% of loans at issue).

Plaintiffs are mistaken. Their estimate of Defendants' potential recovery is based upon estimated litigation costs in February 2007 and January 2008, years before this lawsuit was filed. It does not include any litigation costs arising out of this lawsuit, as well as any other costs accruing in the several years that have elapsed since Defendants' proofs of claims were filed. Neither party offers a current estimate of these contingent claims. As for Plaintiffs' argument that the bankrupt entities constitute only a minority of the loan originators involved in this action, this argument focuses on the wrong proceeding. The "close nexus" test focuses upon the effect of the matter on "the interpretation, implementation, consummation, execution, or administration of the confirmed plan," not the significance of the bankrupt entities in the matter itself. *In re Gen. Media*, 335 B.R. at 73. Defendants' rights of indemnification have already given rise to existing liabilities, which the Defendants have already claimed against the bankrupt estates. These claims will affect the distribution of assets among creditors in the bankruptcy proceeding. The possibility that these claims may result in small payouts is immaterial, because these payouts will be commensurate with the payouts of other contingent claimants, and thus affect those claimants' rights in the implementation of the confirmed plan.

Finally, the Chapter 7 liquidation proceeding for First NLC is ongoing, and as a result the "close nexus" test does not apply to determine jurisdiction. Plaintiffs argue that "related to"

---

property for distribution [i.e., the debtor's estate] or the allocation of property among creditors." *In re FedPak Sys., Inc.*, 80 F.3d 207, 213–14 (7th Cir. 1996) (internal quotation marks omitted). This test differs from both the "conceivable effect" and "close nexus" standards of the Second Circuit. Therefore, the holding of *Fed. Home Loan Bank of Indianapolis* does not govern the instant case.

10

jurisdiction is narrower under Chapter 7 than under Chapter 11.  The United States Supreme Court has commented in dicta that bankruptcy jurisdiction "may extend more broadly" for Chapter 11 reorganizations than Chapter 7 liquidations.  *Celotex*, 514 U.S. at 310; *see also In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 317 (S.D.N.Y. 2003) (citing *Celotex*); *In re van Diepen*, No. 07-cv-1835-Orl-19, 2008 U.S. Dist. LEXIS 107506, at *24 (M.D. Fla. Sept. 30, 2008) (same).  However, no distinct standard for "related to" jurisdiction under Chapter 7 exists in the caselaw, and some courts ruling on such jurisdiction have used a narrow Chapter 11 standard.  *See, e.g.*, *In re Canion*, 196 F.3d 579, 586–87 (5th Cir. 1999) (applying "conceivable effect" standard of "related to" jurisdiction for Chapter 7 bankruptcy proceeding).  At least one court has found the distinction "immaterial" because courts "apply the same analysis . . . to adversary proceedings related to Chapter 7 and Chapter 11 bankruptcy cases."  *McCord v. Papantoniou*, 316 B.R. 113, 122 n.10 (E.D.N.Y. 2004) (discussing jurisdiction under 28 U.S.C. § 157).

     In any event, even if Plaintiffs could establish a narrower test for Chapter 7 jurisdiction, such jurisdiction would still attach for the reasons discussed *supra* with respect to People's Choice and AHM.  First NLC agreed to indemnify Defendant DBSP in language nearly identical to the indemnification clauses in the People's Choice master loan purchasing agreement.  Reynard Decl. Ex. E, at 33–34.  Defendants filed a claim for these indemnification rights against the First NLC bankruptcy estate in April 2008, noting that the amount of this claim was as yet undetermined.  Reynard Decl. Ex. H.  These indemnification rights attached immediately upon the filing of this lawsuit, as with People's Choice and AHM, and therefore the bankruptcy estate is already liable to Defendants.

Plaintiffs argue that any indemnification claim against First NLC will have a minimal effect on the estate because the claimed liabilities in the bankruptcy proceeding far exceed the value of the estate.  Chung Decl. Ex. N.  This argument also fails.  The bankruptcy court has made no decision on the allocation of the estate among the various categories of claims, so it is impossible to determine whether Defendants' indemnification claim will be modest relative to other claimants.  Even if it is modest, Defendants' claim will necessarily affect the implementation of any liquidation plan that is eventually approved by the court.

Accordingly, this Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b).

### B. Mandatory Abstention under 28 U.S.C. § 1334(c)(2)

Even where federal bankruptcy jurisdiction exists over a matter pursuant to 28 U.S.C. § 1334(b), courts are required to abstain and remand a proceeding to state court when it is "based upon a State law claim or State law cause of action, related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section" and "if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."  *Id.* § 1334(c)(2).  This mandatory abstention provision may apply to removed actions.  *Mt. McKinley Ins. Co. v. Corning, Inc.*, 399 F.3d 436, 447 (2d Cir. 2005).  The statute requires district courts to abstain from hearing a case if "(1) the motion was timely brought; (2) the proceeding in federal court is based upon a state law claim; (3) the proceeding is related to a bankruptcy proceeding, but does not arise under title 11 or arise in a title 11 case; (4) section 1334 is the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6)

12

the action can be timely adjudicated in state court." *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 337 B.R. 22, 26 (S.D.N.Y. 2005) (internal quotation marks omitted).

Many district courts have required the movant to affirmatively demonstrate that these requirements have been met. *See, e.g.*, *In re Refco*, 628 F. Supp. 2d at 445 (plaintiff "has not met its burden of proving that its claims can be timely adjudicated" in state court) (internal quotation marks omitted); *In re WorldCom*, 293 B.R. at 331 ("A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements."). However, the Second Circuit recently noted that "[p]lacing the burden on the party seeking remand may . . . be inconsistent with the mandatory nature of abstention under § 1334(c)(2) as well as the principles of comity, which presume that a state court will operate efficiently and effectively." *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 582 (2d Cir. 2011). Therefore, Defendants bear the burden of demonstrating that the test for mandatory abstention has not been met. Defendants dispute the second, fifth, and sixth prongs of this test.

### 1. Plaintiffs' State Claims and Federal Law

Defendants contend that this proceeding is not based upon state law claims because Plaintiffs have essentially pleaded a federal securities action in the guise of a state common law case. Noting that Plaintiffs' claims are based on the Offering Materials, and that Defendants filed the Offering Materials with the United States Securities and Exchange Commission ("SEC"), they argue that Plaintiffs' claims are premised on Defendants' alleged misrepresentations to the SEC, and involve the construction and application of federal statutes and regulations governing SEC filings. Therefore, they claim, federal securities law comprises a "necessary element" of Plaintiffs' state law claims. *Bellido-Sullivan v. Am. Int'l Grp., Inc.*, 123 F. Supp. 2d 161, 164 (S.D.N.Y. 2000).

"Under the well-pleaded complaint rule . . . plaintiff is the master of his complaint and is free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010) (internal quotation marks and citation omitted). An exception to this rule exists in "certain limited circumstances" where "a plaintiff may not defeat removal by clothing a federal claim in state garb, or, as it is said, by use of artful pleading." *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir. 1986) (internal quotation marks omitted). The Second Circuit has recently limited the application of the artful pleading doctrine; it applies "when Congress has either (1) so completely preempted, or entirely substituted, a federal law cause of action for a state one that plaintiff cannot avoid removal by declining to plead necessary federal questions, . . . or (2) expressly provided for the removal of particular actions asserting state law claims in state court." *Romano*, 609 F.3d at 519 (internal quotation marks omitted) (citing *Rivet v. Regions Bank*, 522 U.S 470, 475 (1998); *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)). If either prong is met, courts should "look beyond the face of an 'artfully pled' complaint to determine whether plaintiff has 'cloth[ed] a federal law claim in state garb' by pleading state law claims that actually arise under federal law." *Romano*, 609 F.3d at 519 (quoting *Sarkisian*, 794 F.2d at 758).

Defendants fail to establish that the instant case meets either prong of the *Romano* test. Instead, they cite older cases that omit the test, and proceed directly to consider whether federal claims were pleaded as state claims. *See, e.g.*, *Marcus v. AT&T Corp.*, 138 F.3d 46, 55 (2d Cir. 1998); *Nordlicht v. N.Y. Tel. Co.*, 799 F.2d 859, 862 (2d Cir. 1986). These cases state that "courts will generally only allow removal where a determination of the meaning or application of federal law is required to resolve a claim created by state law." *Bellido-Sullivan*, 123 F. Supp.

2d at 165 (citing *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983)).

Even if Defendants' failure to address the *Romano* test is disregarded, and their argument of artful pleading is considered under this older standard, Defendants fail to establish that questions of federal law must be addressed to resolve Plaintiffs' claims. Plaintiffs' Complaint alleges that Defendants Deutsche Alt-A Securities and ACE Securities Corp. are considered issuers of the Certificates "within the meaning of Section 2(a)(4) of the 1933 Act, 15 U.S.C. § 77b(a)(4), and in accordance with Section 11(a) of the 1933 Act, 15 U.S.C. § 77k(a)." Compl. ¶¶ 15, 16. Section 2(a)(4) of the Securities Act of 1933 ("1933 Act") merely defines the term "issuer"; Section 11(a) imposes civil liability for misrepresentations or omissions in registration statements. 15 U.S.C. §§ 77b(a)(4), 77(k)(a). Based on these isolated allegations in the Complaint, offered only to identify the parties and raising no causes of action, Defendants argue that Plaintiff's claims "implicate federal law," presumably referring to the cited provisions of the 1933 Act. Def. Mem. Supp. Mot. Remand, 18. This argument incorrectly characterizes the applicable legal standard; mere implication of federal law is not enough to support removal of state claims. Instead, the federal question must be necessary to resolve the state claims, and that test is not met here.

Plaintiffs do not state a claim under Section 11(a) or any other provision of the federal securities laws, and their state common law claims do not allege violation of the federal securities laws as a necessary element. Furthermore, assuming that Section 11(a) could provide a federal cause of action for Plaintiffs, its elements differ significantly from those of the common law claims that Plaintiffs actually allege. *See Sarkisian*, 794 F.2d at 760 (state claim removable to federal court where elements of the state claim are "virtually identical to those of a claim

15

expressly grounded on federal law"). A Section 11 claim "has three elements: 1) a defendant is a signer of a registration statement or a director of the issuer or an underwriter for the offering; 2) the plaintiff purchased the registered securities; and 3) any part of the registration statement for the offering contained an untrue statement of a material fact or omitted to state a material fact necessary to make the statements not misleading." *In re CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 587 (S.D.N.Y. 2010). On the other hand, Plaintiffs' New York common-law fraud claim requires "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). Plaintiffs' New York negligent misrepresentation claim requires them "to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007). The state causes of action require a showing of reasonable or justifiable reliance; Section 11 lacks such a requirement. Given these differences, Defendants cannot establish that Plaintiffs have disguised federal securities claims as state common law claims.

In sum, Defendants have failed to demonstrate that federal questions of law are necessary to resolve Plaintiffs' state common law claims, and are not entitled to denial of mandatory abstention on that basis.

### 2. Commencement of the State Court Action

Next, Defendants maintain that the fifth prong of the test for mandatory abstention requires Plaintiffs to have commenced this action prior to the originators' bankruptcy proceedings. Although they concede that the Second Circuit "has not addressed the issue,"

*Langston Law Firm v. Mississippi*, 410 B.R. 150, 155 (S.D.N.Y. 2008), they claim that such a requirement is necessary to prevent parties from derailing federal bankruptcy proceedings by strategically filing cases in state court and invoking mandatory abstention. *See, e.g.*, *In re Rimsat, Ltd.*, 98 F.3d 956, 962 (7th Cir. 1996) (similar abstention provision in 11 U.S.C. § 305 "does not require the bankruptcy court to abstain on the basis of a proceeding instituted after, and in an effort to defeat, the bankruptcy proceeding—strategic conduct that is not to be encouraged.").

These policy concerns are not relevant to the instant case. The bankrupt originators are not parties to this proceeding and comprise a minority of the mortgage loan originators involved, making it exceedingly unlikely that the proceeding was designed to obstruct the bankruptcy proceedings. Moreover, the bankruptcy proceedings at issue in this case were commenced in 2007 and January 2008, more than three years before the Complaint was filed in this action. Defendants provide no explanation as to why Plaintiffs waited more than three years to file this lawsuit if they intended to interfere with the bankruptcies of People's Choice, AHM, and First NLC, two of which have already been confirmed by the bankruptcy court. At any rate, many courts in this District have applied mandatory abstention under § 1334(c)(2) to state court cases filed after the commencement of bankruptcy proceedings.[4] Therefore, Plaintiffs properly commenced this action in state court as required by § 1334(c)(2).

---

[4] *See, e.g.*, *Mt. McKinley Ins. Co.*, 399 F.3d at 446–47 (discussing abstention under § 1334(c)(2) in case where state proceeding commenced two years after relevant bankruptcy); *In re Extended Stay Inc.*, 435 B.R. 139, 144–45, 152 (S.D.N.Y. 2010) (granting mandatory abstention where state court proceedings filed shortly after bankruptcy proceeding commenced); *Buechner v. Avery*, No. 05 Civ. 2074 (PKC), 2005 WL 3789110, at *1–2, *7–8 (S.D.N.Y. July 27, 2005) (same); *In re Bradlees, Inc.*, No. 04 Civ. 5500 (HB), 2005 WL 106794, at *2, *6–8 (S.D.N.Y. Jan. 19, 2005) (same).

### 3. Timely Adjudication in State Court

Defendants contend that Plaintiffs have failed to demonstrate that the proceeding can be timely adjudicated in state court. "Four factors come into play in evaluating § 1334(c)(2) timeliness: (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Parmalat*, 639 F.3d at 580. Defendants do not contest most of the prongs on this test, focusing entirely upon the second prong.

In considering timely adjudication on a § 1334(c)(2) motion for mandatory abstention, "the relative adjudication times are not solely determinative, but do shed light on whether the state court can timely adjudicate the matter." *Parmalat*, 639 F.3d at 581. "Where the legal issues in a case are especially complex, the forum with the most expertise in the relevant areas of law may well be expected to adjudicate the matter in a more timely fashion relative to the other forum." *Id.* at 580. Similarly, in a case with "especially complex" facts, "the forum with greater familiarity with the record may likewise be expected to adjudicate the matter more quickly." *Id.* at 581. As stated *supra*, the Second Circuit has noted that the party opposing remand should bear the burden to demonstrate that the proceeding cannot be timely adjudicated in state court. *Id.* at 582.

Defendants argue that this case involves questions of federal securities law best suited to the expertise of a federal forum, but as discussed *supra*, they fail to substantiate their claim that this case involves questions of federal securities law. Their remaining contention is that New York state courts do not routinely hear cases involving complex offerings of mortgage-backed

18

securities, and that the few such cases they do hear involve straightforward issues of contract interpretation. In contrast, Defendants claim, courts in the Southern District of New York have heard many cases involving mortgage-backed securities. However, Defendants' comparison fails to establish that the state court cannot timely adjudicate this proceeding. The Supreme Court of the State of New York for New York County is currently hearing a number of cases involving both contract and common-law tort claims against mortgage loan originators. These cases raise the same claims of fraud and negligent misrepresentation alleged here; some involve pools of loans considerably larger than those in the instant case. *See, e.g.*, *MBIA Ins. Co. v. Countrywide Home Loans, Inc.*, No. 602825/2008 (N.Y. Sup. Ct. Aug. 24, 2009); *MBIA Ins. Co. v. Res. Funding Co., LLC*, No. 603552/2008 (N.Y. Sup. Ct. Dec. 4, 2008); *MBIA Ins. Co. v. GMAC Mortg., LLC*, No. 600837/2010 (N.Y. Sup. Ct. Apr. 1, 2010). Defendants have offered no evidence that the state court lacks the expertise to adjudicate these cases, or that they have progressed slowly through the state court system. Meanwhile, all of the Southern District cases offered by Defendants involve federal as well as state claims.[5] While federal district courts

---

[5] *See, e.g.*, *N.J. Carpenters Health Fund v. Royal Bank of Scotland PLC et al.*, No. 08 Civ. 5310 (DAB) (S.D.N.Y. June 10, 2008) (state class action alleging exclusively federal securities law claims removed to federal court pursuant to Class Action Fairness Act ); *N.J. Carpenters Health Fund et al. v. DLJ Mortg. Capital, Inc. et al.*, No. 08 Civ. 5653 (PAC) (S.D.N.Y. June 23, 2008) (same); *N.J. Carpenters Health Fund et al. v. RAIL Series 2006-Q1 Trust et al.*, No. 08 Civ. 8781 (HB) (S.D.N.Y. Oct. 14, 2008) (same); *N.J. Carpenters Vacation Fund et al. v. Royal Bank of Scotland Grp., PLC, et al.*, No. 08 Civ. 5093 (HB) (S.D.N.Y. June 3, 2008) (same); *Tsereteli v. Res. Asset Securitization Trust 2006-A8 Trust 2006-A8 et al.*, No. 08 Civ. 10637 (LAK) (Dec. 8, 2008) (same); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 08 Civ. 8093 (LTS) (S.D.N.Y. Sep. 18, 2008) (same); *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co. et al.*, No. 08 Civ. 10783 (MGC) (S.D.N.Y. Dec. 11, 2008) (federal class action alleging exclusively federal securities law claims); *Fort Worth Emp's Retirement Fund v. J.P. Morgan Chase Co. et al.*, No. 09 Civ. 3701 (JGK) (S.D.N.Y. Apr. 10, 2009) (state class action alleging exclusively federal securities law claims removed to federal court; motion to remand withdrawn); *Footbridge Ltd. Trust v. Countrywide Fin. Corp. et al.*, No. 10 Civ. 367 (PKC) (S.D.N.Y. Jan. 15, 2010) (case alleging both federal and state claims); *Allstate Ins. Co. v . Countrywide Fin. Corp. et al.*, No. 10 Civ. 9591 (AKH) (S.D.N.Y. Dec. 27, 2010) (same); *Footbridge Ltd. Trust v. CountryWide Home Loans, Inc., et al.*, No. 09 Civ. 4050 (PKC) (S.D.N.Y. Apr. 23, 2009) (same).

naturally possess expertise in applying federal law, this advantage dissipates for cases alleging exclusively state claims.

Accordingly, Plaintiffs are entitled to mandatory abstention under 28 U.S.C. § 1334(c)(2). Plaintiffs also argue for permissive abstention under 28 U.S.C. §§ 1334(c)(1) and 1452(b); these arguments are now moot.

### IV. Conclusion

Plaintiffs' motion to remand this case back to state court is granted. The Clerk of Court is directed to remand this action to the Supreme Court of the State of New York, New York County.

SO ORDERED.

Dated: August 16, 2011
       New York, NY

_____
U.S.D.J.